# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

CARNELL HUNNICUTT,

        Plaintiff,

vs.                                               No. CIV 18-0667 JB\KRS

DESTINEE MOORE; RAYMOND SMITH;
GEO CORP.; LCCF; M. VALERIANO;
STACEY BEAIRD; KATHERINE BRODIE;
P. VALDEZ; T. FOSTER, and GERMAN
FRANCO,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND</u>

**THIS MATTER** comes before the Court, under 28 U.S.C. § 1915A, on the Plaintiff's Complaint (Tort), filed in the County of Lea, Fifth Judicial District Court, State of New Mexico December 21, 2017, filed in federal court July 12, 2018 (Doc. 1-1)("Complaint"), and the Plaintiff's Motion in Opposition for Removal of Civil Action, filed August 9, 2018 (Doc. 6)("Motion to Remand"). Defendant The GEO Group, Inc., removed the case to the Court on July 12, 2018. <u>See</u> Notice of Removal, filed July 12, 2018 (Doc. 1). The Court dismisses Plaintiff Carnell Hunnicutt's copyright and prison grievance claims in the Complaint, and concludes that Hunnicutt has stated a 42 U.S.C. § 1983 claim against Defendants Destinee Moore, Raymond Smith, Stacey Beaird, and Katherine Brodie for violation of his First Amendment to the Constitution of the United States of America rights. With federal claims remaining, the Court will not remand the case and, thus, the Court denies the Motion to Remand.

## FACTUAL AND PROCEDURAL BACKGROUND

Hunnicutt filed his Complaint in the County of Lea, Fifth Judicial District Court, State of New Mexico, on December 21, 2017.  See Complaint at 1.  The Complaint states that the "Fifth Judicial District Court has jurisdiction in Tort actions pursuant to the New Mexico Tort Claims Act N.M.S.A. Chapter 41."  Complaint ¶ 2, at 1.  The Complaint describes the nature of this action as "Copyright infringement, censorship, interference with outgoing mail, retaliatory punishment, negligence and infractions for criticizing prison conditions and personnel in outgoing correspondence."  Complaint ¶ 1(a), at 1.  Hunnicutt further alleges that the Defendants "blame the Plaintiff for exercising his First Amendment Rights pertaining to his outgoing correspondence."  Complaint ¶ 5, at 2.  Last, Hunnicutt avers that "[a]ll of my allegations are based on the copyright protection and the Defendants knowing and intentional arrogation of power and violating New Mexico Corrections Department Regulations and NMSA 1978, 33-1-6 and 33-2-10."  Complaint ¶ 11, at 4.

The GEO Group removed the case from state court to the Court on July 12, 2018.  See Notice of Removal at 1.  The GEO Group states that "[t]he Complaint is subject to the jurisdiction of this Court pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims for copyright infringement pursuant to the Copyright Act of 1976 [and] . . . pursuant to 42 U.S.C. § 1983 for violation of Plaintiff's First Amendment rights."  Notice of Removal ¶ 5, at 2 (citations omitted).  The Geo Group filed its Answer.  See Defendant The GEO Group, Inc.'s Answer to Plaintiff's Complaint, filed July 13, 2018 (Doc. 2)("Answer").

Hunnicutt filed the Motion to Remand, in which Hunnicutt moves to remand the case to state court. See Motion to Remand ¶ 6, at 1. Hunnicutt does not dispute that he asserts federal copyright and civil rights claims, but argues that the Court should remand this case, because his state law claims "substantially predominate[]" over the federal claims. Motion to Remand ¶ 5, at 1. Defendants The GEO Group, M. Valeriano, Brodie, and P. Valdez respond in opposition to the case's remand. See Defendants Geo, Valeriano, Brodie and Valdez' Response in Opposition to Plaintiff's Motion in Opposition for Removal of Civil Act (Doc. 6), filed August 16, 2018 (Doc. 10)("Response").

## PENDING MOTIONS

The GEO Group also sought a protective order, requesting the Court to relieve it of the obligation to respond to Hunnicutt's discovery until the Court completes its preliminary review of the case. See The GEO Defendants' Motion for Protective Order ¶ 8, at 2, filed September 14, 2018 (Doc. 12)("Protective Order Motion"). Hunnicutt did not respond to the Protective Order Motion but, instead, filed Plaintiff's Motion to Request Discovery from the Defendants' [sic], filed September 28, 2018 (Doc. 13)("Discovery Motion"), seeking to compel the Defendants to respond to discovery requests. See generally, Discovery Motion. Pending before the Court are the Protective Order Motion, the Discovery Motion, The GEO Defendants' Motion for Summary Judgment and Memorandum of Law in Support, filed October 12, 2018 (Doc. 16), Plaintiff's Motion that Defendants' Motion for Summary Judgment be Denied or Stayed Until Plaintiff had Sufficient Opportunity to Obtain the Necessary Facts, and the Court's Initial Review is Completed, filed November 29, 2018 (Doc. 20), and the Plaintiff's Motion for Extension of Time to Respond

to GEO Defendants Motion for Summary Judgment and Memorandum of Law in Support, filed January 22, 2019 (Doc. 29). Under 28 U.S.C. § 1915A, the Court is obligated to conduct an initial screening of Hunnicutt's Complaint. In this Memorandum Opinion and Order, the Court conducts an initial screening of Hunnicutt's Complaint, and denies the Motion to Remand. The rest of the motions remain pending for later decision.

### THE LAW GOVERNING § 1915A REVIEW AND FAILURE TO STATE A CLAIM

Under the Prison Litigation Reform Act, 42 U.S.C. § 1997(e), the court is obligated to preliminarily screen the Complaint. See 28 U.S.C. § 1915A. Whenever a prisoner brings a civil action against government officials, the Court must screen the prisoner's complaint or petition. 28 U.S.C. § 1915A. Section 1915A states:

> The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> . . . .
>
> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint --
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> >
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(a)-(b).

In conducting the § 1915A review, the court has the discretion to dismiss a pro se complaint sua sponte for failure to state a claim upon which relief may be granted under rule 12(b)(6) of the Federal Rules of Civil Procedure. See 28 U.S.C. § 1915A(b)(1). Under rule 12(b)(6), the court

must accept all well-pled factual allegations, but not conclusory, unsupported allegations, and may not consider matters outside the pleading. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Dunn v. White, 880 F.2d 1188, 1190 (10th Cir. 1989). The court may dismiss a complaint under rule 12(b)(6) for failure to state a claim if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged." Hall v. Bellmon, 935 F.2d 1106, 1109 (10th Cir. 1991)(quoting McKinney v. Okla. Dep't of Human Servs., 925 F.2d 363, 365 (10th Cir. 1991)). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. at 570. A claim should be dismissed where it is legally or factually insufficient to state a plausible claim for relief. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570.

In reviewing a pro se complaint, the court liberally construes the factual allegations. See Northington v. Jackson, 973 F.2d 1518, 1520-21 (10th Cir. 1992). The same legal standards that apply to all litigants, however, judge a pro se plaintiff's pleadings, and a pro se plaintiff must abide by the court's applicable rules. See Ogden v. San Juan Cty., 32 F.3d 452, 455 (10th Cir. 1994). The court is not obligated to craft legal theories for the plaintiff or to supply factual allegations to support the plaintiff's claims. Nor may the court assume the advocate's role for the pro se litigant. See Hall v. Bellmon, 935 F.2d at 1110.

## THE LAW GOVERNING CIVIL RIGHTS CLAIMS UNDER 42 U.S.C. § 1983

Section 1983 is the exclusive vehicle for vindication of substantive rights under the Constitution of the United States of America. See Albright v. Oliver, 510 U.S. 266, 271 (1994)(holding that § 1983 creates no substantive rights; rather it is the means through which a plaintiff may seek redress for deprivations of rights that the Constitution establishes); Baker v.

McCollan, 443 U.S. 137, 144 n.3 (1979); Bolden v. City of Topeka, 441 F.3d 1129, 1136 (10th Cir. 2006). Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

The State is not a "person" within the meaning of 42 U.S.C. § 1983, and, therefore, there is no remedy against the State under § 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58, 63-64 (1989). Section 1983 is a "remedial vehicle for raising claims based on the violation of constitutional rights." Brown v. Buhman, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016). It does not abrogate the States' sovereign immunity, and the States, their agencies, and their officials sued solely in their official capacity do not qualify as "persons" under § 1983. See Will v. Mich. Dep't of State Police, 491 U.S. at 67, 71; Wood v. Milyard, 414 F. App'x 103, 105 (10th Cir. 2011)(unpublished).[1]

---

[1]Wood v. Milyard is an unpublished opinion, but the Court can rely on an unpublished opinion for the United States Court of Appeals for the Tenth Circuit to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that Wood v. Milyard, Bates v. Board of County Commissioners of Mayes County, 674 F. App'x 830 (10th Cir. 2017), Allen v. Corrections Corp. of America, 524 F. App'x 460 (10th Cir. 2013), Boyd v. Werholtz, 443 F. App'x 331 (10th Cir. 2011), Von Hallcy v. Clements, 519 F. App'x 521 (10th Cir. 2013), Merryfield v. Jordan, 431 F. App'x 743 (10th Cir. 2011), and Ciempa v. Ward,

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must assert acts by government officials acting under color of law that result in a deprivation of rights which the Constitution secures. <u>See</u> 42 U.S.C. § 1983; <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). There must be a connection between official conduct and violation of a constitutional right, because conduct that is not connected to a constitutional violation is not actionable under § 1983. <u>See</u> <u>Trask v. Franco</u>, 446 F.3d 1036, 1046 (10th Cir. 1998).

Further, a civil rights action against a public official or entity may not be based solely on a theory of respondeat superior liability for the actions of co-workers or subordinates. A plaintiff must plead that each government official, through the official's own individual actions, has violated the Constitution. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009). The plaintiff must allege some personal involvement by an identified official in the alleged constitutional violation to succeed under § 1983. <u>See</u> <u>Fogarty v. Gallegos</u>, 523 F.3d 1147, 1162 (10th Cir. 2008). To hold private entities acting under color of state law or county entities liable under § 1983, a plaintiff must allege the existence of a policy or custom, and that there is a direct causal link between the policy or custom, and the injury alleged. <u>See</u> <u>Hinton v. City of Elwood</u>, 997 F.2d 774, 782 (10th Cir. 1993); <u>Dodd v. Richardson</u>, 614 F.3d 1185, 1195 (10th Cir. 2010); <u>Bates v. Bd. of Cty. Comm'rs of Mayes Cty.</u>, 674 F. App'x 830, 833 (10th Cir. 2017)(unpublished).

---

150 F. App'x 905 (10th Cir. 2005), have persuasive value with respect to material issues, and will assist the Court in its disposition of this Memorandum Opinion and Order Denying Motion to Remand.

In a § 1983 action, it is particularly important that a plaintiff's complaint "make clear exactly *who* is alleged to have done *what to whom*, to provide each individual with fair notice as to the basis of the claim against him or her." Robbins v. Oklahoma, 519 F.3d 1242, 1249-50 (10th Cir. 2008)(emphasis in the original). Nor do generalized statements that the defendants caused the deprivation of a constitutional right, without plausible supporting factual allegations, state any claim for relief. See Robbins v. Oklahoma, 519 F.3d at 1249-50.

## THE LAW OF COPYRIGHT INFRINGEMENT

The Copyright Act of 1976, 17 U.S.C. §§ 101-810 (the "1976 Copyright Act"), governs copyright infringement claims, over which federal courts have exclusive jurisdiction. See 28 U.S.C. § 1338(a). The 1976 Copyright Act provides that

> the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies . . . ; (2) to prepare derivative works based upon the copyrighted work; [and] (3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; . . . .

17 U.S.C. § 106. Anyone who violates any of the copyright owner's exclusive rights by using or authorizing the copyrighted work's use in one of the ways the statute outlines, infringes the copyright. See Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 433 (1984)(citing 17 U.S.C. § 501(a)).

There are two elements to a copyright infringement claim: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). To prevail on a claim of copyright infringement, the plaintiff bears the burden of establishing ownership of a valid copyright and the

- 8 -

defendant's violation of any one of the exclusive rights granted to copyright owners under 17 U.S.C. § 106.  See Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d 823, 831-32 (10th Cir. 1993); Palladium Music, Inc. v. EatSleepMusic, Inc., 398 F.3d 1193, 1196 (10th Cir. 2005).

To establish direct copyright infringement, a plaintiff must allege and prove that a defendant "unlawfully appropriated protected portions of the copyrighted work."  Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d at 832.  This requires proving both: (i) that the defendant, as a factual matter, copied portions of plaintiff's work; and (ii) that those elements of the work that were copied were protected expression and used in such a manner that the appropriation is actionable under § 106.  See Jacobsen v. Deseret Book Co., 287 F.3d 936, 942 (10th Cir. 2002); Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d at 832.

Although the 1976 Copyright Act does not expressly cover contributory infringement, this doctrine of secondary liability is well established in the law and is grounded in common-law principles of secondary liability.  See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005).  Contributory liability attaches when the defendant intentionally induced or encouraged direct infringement by another.  See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 545 U.S. at 930.  To establish contributory infringement, a plaintiff must prove: (i) direct copyright infringement by a third-party; (ii) knowledge by the defendant of the direct infringement; and (iii) that the defendant intentionally induced, caused, or materially contributed the infringement.  See Diversey v. Schmidly, 738 F.3d 1196, 1204 (10th Cir. 2013).  One way of establishing contributory liability is by showing a defendant "authorized the infringing use."

Diversey v. Schmidly, 738 F.3d at 1204.  See Boatman v. U.S. Racquetball Ass'n, 33 F. Supp. 3d 1264, 1273 (D. Colo. 2014)(Krieger, J.).

## THE LAW REGARDING FIRST AMENDMENT RIGHTS AND RESTRICTIONS ON PRISONER CORRESPONDENCE

Prisoners retain the First Amendment right of free speech, and prison officials may not retaliate against prisoners for exercising that right.  See Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003)("The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech.").  Prisoners also retain their First Amendment right to petition the government for a redress of grievances.  See Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989).  A prisoner's incarceration, however, legitimately limits his or her rights.  See Pell v. Procunier, 417 U.S. 817, 822 (1974).  "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  Pell v. Procunier, 417 U.S. at 822.

The Supreme Court of the United States has treated interference with a prisoner's mail as implicating the First Amendment free speech right.  See Bolgers v. Youngs Drug Prods. Corp., 463 U.S. 60, 69 (1983); Blount v. Rizzzi, 400 U.S. 410, 416 (1971); Lamont v. Postmaster General, 381 U.S. 301, 307-08 (1965).  See also Hale v. Ashcroft, Civil No. 06-cv-00541-REB-KLM, 2008 WL 4426128, at *10 (D. Colo. Sept. 24, 2008)(Hale, M.J.)  Courts have, however, upheld the censorship of mail for legitimate penological interests.  See Wolff v. McDonnell, 418 U.S. 539, 576 (1974)(noting that "freedom from censorship is not equivalent to freedom from inspection or perusal," and, furthermore, while "First Amendment rights of correspondents with prisoners may

protect against the censoring of inmate mail, when not necessary to protect legitimate governmental interests, . . . this Court has not yet recognized First Amendment rights of prisoners in this context . . . ." (citations omitted)).

In the censorship context, the Supreme Court has differentiated between ingoing and outgoing mail, and has afforded greater First Amendment protection to outgoing mail, because of the lesser security concerns associated with outgoing mail. See Thornburgh v. Abbott, 490 U.S. 401, 413 (1989). In one instance, the Supreme Court prohibited a prison's censorship of outgoing mail containing grievances, where the prison's justification for the censorship was "as a precaution against flash riots," because the Supreme Court concluded it was unlikely that outgoing mail stating grievances would impact internal prison security. Procunier v. Martinez, 416 U.S. 396, 416 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989). In Thornburgh v. Abbott, the Supreme Court reiterated its statements in Procunier v. Martinez

> that outgoing correspondence that magnifies grievances or contains inflammatory racial views cannot reasonably be expected to present a danger to the community *inside* the prison. In addition, the implications for security are far more predictable. Dangerous outgoing correspondence is more likely to fall within readily identifiable categories: examples noted in *Martinez* include escape plans, plans relating to ongoing criminal activity, and threats of blackmail or extortion.

Thornburgh v. Abbott, 490 U.S. at 411-12. The Supreme Court noted that "[c]ategorically different considerations" apply in Thornburgh v. Abbott, which deals with incoming publications, than in Procunier v. Martinez, which deals with outgoing personal correspondence. Thornburgh v. Abbott, 490 U.S. at 412. Thornburgh v. Abbott

> overruled *Martinez*'s standard of review for limitations placed on a prisoner's right to incoming mail, but *Thornburgh* did not overrule *Martinez*'s holding pertaining to outgoing mail. The *Thornburgh* Court recognized that "[t]he implications of

outgoing correspondence for prison security are of a categorically lesser magniture than the implications of incoming materials . . . ."  Under *Martinez*, limitations on a prisoner's First Amendment rights in his outgoing mail "must further an important or substantial governmental interest unrelated to the suppression of expression [and] . . . must be no greater than is necessary or essential to the protection of the particular governmental interest involved."

Treff v. Galetka, 74 F.3d 191, 194-95 (10th Cir. 1996)[2](citations omitted)(first quoting Thornburgh v. Abbott, 490 U.S. at 413; and then quoting Procunier v. Martinez, 416 U.S. at 413).  Prison officials may, for instance, justifiably censor outgoing mail containing escape plains, information about proposed criminal activity, or encoded messages.  See Procunier v. Martinez, 416 U.S. at 413.  "Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements."  Procunier v. Martinez, 416 U.S. at 414. See Gandy v. Ortiz, 122 F. App'x 421, 423 (10th Cir. 2005)(unpublished)("Censorship of personal correspondence that include threats, blackmail, contraband, plots to escape, discuss criminal activities, or otherwise circumvent prison regulations, is essential to the protection of prison order and security. . . .  Prison officials, however, may not punish inmates for statements made in letters to outsiders that do not impinge on these important governmental interests.")

When evaluating a challenge to a prison restriction which a prisoner asserts inhibits First Amendment interests, the court must analyze the restriction "in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law."  Pell v. Procunier, 417 U.S. at 822.  See Turner v. Safley,

---

[2]The Tenth Circuit also concluded in Treff v. Galetka that there is a clearly established First Amendment right for a prisoner to have his outgoing mail processed for delivery.  See Treff v. Galetka, 74 F.3d at 195.

482 U.S. 78, 89 (1987)(holding that a prison regulation which impinges on First Amendment freedoms is invalid unless "it is reasonably related to legitimate penological interests.").  Under the Turner v. Safley standard, a prison regulation cannot be sustained if "the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational," Turner v. Safley, 482 U.S. at 89-90, or if the regulation is an "exaggerated response," Turner v. Safley, 482 U.S. at 90, to the prison's legitimate concerns.  "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources."  Turner v. Safley, 482 U.S. at 84-85 (quoted in Smith v. Mosley, 532 F.3d at 1277).

"Prison officials are therefore 'accorded latitude in the administration of prison affairs.'"  Smith v. Mosley, 532 F.3d at 1277 (quoting Cruz v. Beto, 405 U.S. 319, 321 (1972)).  In Ramos v. Lamm, 639 F.3d 559 (10th Cir. 1980), the United States Court of Appeals for the Tenth Circuit stated:

> Because the running of a penal institution is both complex and difficult, prison administrators are to be "accorded wide-ranging deference" in adopting and executing policies and practices which, in their judgment, are necessary to preserve internal order and discipline and to maintain institutional security.  "Such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."

Ramos v. Lamm, 639 F.3d at 579 (citations omitted)(first quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979);and then quoting Jones v. N.C. Prisoner's Union, 433 U.S. 119, 128 (1977)).

## THE LAW REGARDING CLAIMS OF RETALIATION FOR EXERCISE OF FIRST AMENDMENT RIGHTS

To establish a claim of retaliation for exercise of First Amendment rights, a plaintiff  must demonstrate that: (i) he was engaged in constitutionally protected activity; (ii) the defendant's

actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (iii) the plaintiff's exercise of constitutionally protected conduct substantially motivated the defendant's adverse action as a response. See Allen v. Corr. Corp. of Am., 524 F. App'x 460, 463 (10th Cir. 2013)(unpublished)(citing Shero v. City of Grove, 510 F.3d 1196, 1203 (10th Cir. 2007)). Prison officials may not retaliate against or harass an inmate because the inmate has exercised his or her constitutional rights, including engaging in the grievance process. See Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998). This prohibition is applicable even where the action taken in retaliation would otherwise be permissible. See Peterson v. Shanks, 149 F.3d at 1144 (citing Smith v. Maschner, 899 F.2d 940, 947 (10th Cir. 1990)).

Nonetheless, it is not the federal judiciary's role to scrutinize and interfere with a state prison's daily operations, and the restriction on retaliation does not change this role. An inmate does not become inoculated from the normal conditions of confinement which convicted felons serving time in prison experience simply by engaging in protected activity. See Smith v. Maschner, 899 F.2d at 949-50. A prisoner alleging retaliation must prove that, but for the retaliatory motive, the incidents he or she alleges are retaliatory, including disciplinary action, would not have taken place. See Smith v. Maschner, 899 F.2d at 949-50. In addition, an inmate must identify specific facts showing retaliation because of the exercise of the prisoner's constitutional rights. See Peterson v. Shanks, 149 F.3d at 1145.

## THE LAW REGARDING CIVIL RIGHTS CLAIMS AND PRISON GRIEVANCE PROCEDURES

"There is no independent constitutional right to state administrative grievance procedures." Boyd v. Werholtz, 443 F. App'x 331, 332 (10th Cir. 2011)(unpublished). For a state statute to create a "legitimate claim of entitlement" to a benefit and therefore an interest that due process protects, it must, "[s]tated simply," place "substantive limitations on official discretion." Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460, 462 (1989). A viable due process claim cannot rest on allegations of an unfair or inadequate grievance process. See Von Hallcy v. Clements, 519 F. App'x 521, 524 (10th Cir. 2013)(unpublished)(rejecting prisoner's claim that prison director violated due process by providing him with an inadequate prisoner grievance reporting system); Merryfield v. Jordan, 431 F. App'x 743, 749-50 (10th Cir. 2011)(unpublished)(affirming dismissal of claim that prison grievance policy was constitutionally inadequate, because there is no constitutional right to certain grievance procedures); Ciempa v. Ward, 150 F. App'x 905, 906-07, 909 (10th Cir. 2005)(unpublished)(finding no error in judge's dismissal of due process claim based on alleged ineffective prison grievance procedure). See also Burnett v. Allbaugh, 715 F. App'x 848, 852 (10th Cir. 2017).

Officials' handling of a prisoner's grievances does not, by itself, give rise to a constitutional violation. A prison officer's failure to adequately respond to a prisoner's grievance does not implicate a constitutional right. See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993)(per curiam)(holding that official's failure to process inmates' grievances, without more, is not actionable under § 1983); Greer v. DeRobertis, 568 F. Supp. 1370, 1375 (N.D. Ill.

1983)(Shadur, J.)(prison officials' failure to respond to grievance letter violates no constitutional or federal statutory right). See also Shango v. Jurich, 681 F.2d 1091 (7th Cir. 1982)(holding that a prison grievance procedure does not require the procedural protections which the Fourteenth Amendment to the Constitution of the United States of America envisions). Prison grievance procedures are a procedural right only, and do not confer any substantive right upon an inmate. Grievance procedures do not give rise to a protected liberty interest requiring the Fourteenth Amendment's procedural protections. See Buckley v. Barlow, 997 F.2d at 495 (quoting Azeez v. DeRobertis, 568 F. Supp. 8 (N.D. Ill. 1982)(Nordberg, J.)). See also Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)(holding that an inmate has no legitimate claim of entitlement to a grievance procedure).

## ANALYSIS OF PLAINTIFF HUNNICUTT'S CLAIMS

The Court concludes that Hunnicutt has not stated a copyright claim upon which relief may be granted. The Court concludes that Hunnicutt has stated a § 1983 claim against prison officials based on their alleged retaliation against him for his exercise of his First Amendment rights. The Court concludes that Hunnicutt has not stated a claim regarding the prison grievance system upon which relief may be granted. With federal claims remaining in the case, the Court will not remand the case, and the Court denies the Motion to Remand.

## I.     HUNNICUTT HAS NOT STATED A CLAIM FOR COPYRIGHT INFRINGEMENT UPON WHICH RELIEF MAY BE GRANTED.

Hunnicutt alleges that the Defendants committed copyright infringement, violated the copyright on his cartoons, and ignored his copyright concerns. See Complaint at 1-3. Hunnicutt

does not allege or provide, however, any factual evidence that, under the 1976 Copyright Act, he is the owner of a valid copyright. See 17 U.S.C. § 106. Nor does Hunnicutt make factual allegations that any Defendant copied or otherwise made use of any element of a copyrighted work in a manner that the 1976 Copyright Act prohibits. See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. at 361. Hunnicutt does not allege that prison officials made copies of or distributed a copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending. See 17 U.S.C. § 106; Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. at 433. Hunnicutt's allegations do not satisfy the requirements for a copyright infringement claim -- as other federal courts have advised him. See, e.g., Hunnicutt v. Lantz, 2009 WL 290994 (D. Conn. 2009)(Hall, J.). The Complaint does not state any claim for relief under the 1976 Copyright Act. See Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. at 433.

## II. HUNNICUTT STATES A RETALIATION CLAIM AGAINST PRISON OFFICIALS FOR EXERCISE OF HIS FIRST AMENDMENT RIGHTS.

Hunnicutt alleges that Defendant Destinee Moore, acting under Defendants Smith, Beaird, Brodie, Valdez, and T. Foster, "routinely targeted Plaintiff's outgoing mail for political cartoons/cartoons about the prison and incidents with staff." Complaint ¶ 5, at 2. Hunnicutt alleges that the above-named Defendants attempted to "censor and punish him for criticizing prison conditions and personnel in his outgoing mail." Complaint ¶ 5, at 2. Hunnicutt alleges that Moore read and withheld his outgoing mail on or about May 24, 2017, June 1, 2017, June 16, 2017, June 21, 2017, and June 26, 2017, each time containing the political cartoon. See Complaint ¶¶ 5-8, at 2-3. Hunnicutt alleges that Moore intercepted, rejected, and returned to him outgoing

mail that contained "political cartoons about the prison and incidents with staff." Complaint ¶¶ 5-8, at 2-3. Hunnicutt states that Moore punished him for "criticizing prison staff" in his outgoing mail, by censoring him and writing misconduct reports concerning his outgoing mail. Complaint ¶¶ 5-8, at 2-3. Hunnicutt also alleges retaliation by prison officials for exercise of his First Amendment rights. <u>See</u> Complaint ¶ 5, at 2.

Under rule 12(b)(6), the Court must accept all well-pled factual allegations, but not conclusory, unsupported allegations as true, and may not consider matters outside the pleading. <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555; <u>Dunn v. White</u>, 880 F.2d at 1190. Because Hunnicutt is pro se, the Court construes his pleadings liberally, applying a less stringent standard than the Court applies to formal, lawyer-drafted pleadings. <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>Hall v. Bellmon</u>, 935 F.2d at 1110. "As a threshold matter, a prisoner in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected." <u>Gandy v. Ortiz</u>, 122 F. App'x at 422 (citing <u>Smith v. Maschner</u>, 899 F.2d at 942-45). The Supreme Court held in <u>Thornburgh v. Abbott</u> that restrictions on inmate mail are justified if reasonably related to an important government interest, and also noted that outgoing mail is subject to greater First Amendment protection, because of the lesser security concerns associated. <u>See</u> <u>Thornburgh v. Abbott</u>, 490 U.S. at 411-13. Prison officials may censor outgoing mail containing escape plans, information about proposed criminal activity, or encoded messages. <u>See</u> <u>Procunier v. Martinez</u>, 416 U.S. at 413. "Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements." <u>Procunier v. Martinez</u>, 416 U.S. at 414.

Censorship of personal correspondence that include threats, blackmail, contraband, plots to escape, discuss criminal activities, or otherwise circumvent prison regulations, is essential to the protection of prison order and security. . . . Prison officials, however, may not punish inmates for statements made in letters to outsiders that do not impinge on these important governmental interests.

Gandy v. Ortiz, 122 F. App'x at 423.  See also Brooks v. Andolina, 826 F.2d 1266, 1268 (3d Cir. 1987)("If prison officials cannot censor unflattering statements made in letters to outsiders, they also may not punish an inmate for the contents of such letters.").   In accordance with these principles, Hunnicutt has stated a claim that the conduct which led to the alleged retaliation -- attempting to send a cartoon criticizing prison staff and conditions -- is constitutionally protected, and that the disciplinary action taken against him -- the filing of misconduct reports -- violates his clearly established constitutional rights.  Taking Hunnicutt's allegations as true, prison officials withheld his outgoing mail, because it contains unflattering or unwelcome opinions, and not out of legitimate penological interests, and then punished Hunnicutt for asserting his First Amendment rights.  See Turner v. Safley, 482 U.S. at 89.  Hunnicutt has stated a First Amendment retaliation claim.

## III.    HUNNICUTT HAS NOT STATED A CLAIM REGARDING THE PRISON GRIEVANCE SYSTEM UPON WHICH RELIEF MAY BE GRANTED.

Hunnicutt also alleges various failures of the prison grievance system.  See Complaint ¶¶ 5-11, at 2-3.  The prison's grievance procedures are not a procedural right, do not confer any substantive right upon Hunnicutt, and do not give rise to a protected liberty interest requiring the Fourteenth Amendment's procedural protections.  See Buckley v. Barlow, 997 F.2d at 495.  See also Mann v. Adams, 855 F.2d at 640.  To the extent, therefore, that Hunnicutt complains that his

grievances were improperly handled in violation of his rights, he has failed to state a claim upon which relief may be granted.  See Boyd v. Werholtz, 443 F. App'x at 332.

## IV.   HUNNICUTT HAS STATED A § 1983 CLAIM BASED ON ALLEGED VIOLATION OF HIS FIRST AMENDMENT RIGHTS.

Hunnicutt's Complaint states a substantive federal claim for relief.  See Complaint at 1-4.  The Complaint asserts acts by government officials acting under color of law that resulted in a deprivation of Hunnicutt's constitutionally secured rights.  See 42 U.S.C. § 1983; West v. Atkins, 487 U.S. at 48.  Hunnicutt pleads that Moore, through Moore's own individual actions, has violated Hunnicutt's First Amendment rights, and so his Complaint states a claim for relief against her.  See Ashcroft v. Iqbal, 556 U.S. at 676.  Hunnicutt's Complaint also alleges that Moore acted under Smith, Beaird, Brodie, Valdez, and Foster in depriving Hunnicutt of his First Amendment Rights.  See Complaint ¶ 5, at 2.  A supervisor is not liable under § 1983 unless there is a causal connection between the deprivation, and either the supervisor's personal participation, exercise of control or direction, or the supervisor's failure to supervise.  See Specht v. Jensen, 832 F.2d 1516, 1524 (10th Cir. 1987).  Hunnicutt alleges that "Smith allowed Defendant Moore to punish the Plaintiff for criticizing prison staff in his outgoing mail and upheld the punishment."  Complaint at 2.  Hunnicutt alleges that, on at least one occasion, Beaird and Moore both signed the notice rejecting Hunnicutt's attempt to send outgoing mail.  See Complaint ¶ 5, at 3.  Hunnicutt alleges that, on another occasion, Brodie and Moore signed the rejection notice.  See Complaint ¶ 6, at 3.  Taking the Complaint's allegations as true, Hunnicutt states a plausible claim that Smith, Beaird, and Brodie personally participated in or directed Moore's alleged violation of Hunnicutt's First

Amendment rights.  See Specht v. Jensen, 832 F.2d at 1524.  Hunnicutt does not allege that the GEO Group, Lea County Correctional Facility ("LCCF"), or any other entity Defendant violated his rights by virtue of an unconstitutional policy or custom.  See Hinton v. City of Elwood, 997 F.2d at 782; Dodd v. Richardson, 614 F.3d at 1195; Bates v. Bd. of Cty. Comm'rs of Mayes Cty., 674 F. App'x at 833.  Although Hunnicutt identifies them as the Defendants, the Complaint's body does not mention the GEO Group or LCCF.  See Complaint at 1.  Although Hunnicutt states that Valdez and Foster violated his First Amendment rights, the rest of the Complaint's First Amendment allegations do not discuss them.  See Complaint at 1-4.  Accordingly, Hunnicutt's possible § 1983 claim lies only against Smith, Beaird, Brodie, and Moore in their individual capacity.  The Court dismisses all federal claims against the GEO Group or LCCF.

## V.     THE COURT WILL NOT REMAND HUNNICUTT'S STATE LAW CLAIMS, BECAUSE FEDERAL CLAIMS REMAIN IN THE CASE.

Hunnicutt originally filed his Complaint in the County of Lea, Fifth Judicial District Court, State of New Mexico.  He alleges that he is proceeding under the New Mexico Tort Claims Act, N.M. Stat. Ann. §§ 41-4-1 through 41-1-27 ("NMTCA").  See Complaint ¶¶ 1-2, at 1.  Hunnicutt asserts, in addition to any federal claims, state law violations in the nature of censorship, interference with outgoing mail, and negligence.  See Complaint ¶ 1(a), at 1.  He cites New Mexico statutes and regulations as his claims' bases.  See Complaint ¶ 11, at 4.  Hunnicutt filed a Motion to Remand the case to state court.  See Motion to Remand.  In the Motion to Remand, Hunnicutt states that he files his action under the NMTCA and not under § 1983.  See Motion to Remand ¶ 1, at 1.  Hunnicutt contends that the Court lacks subject-matter jurisdiction over the case, because he

raises a state tort law issue, which predominates over the federal claims over which Hunnicutt asserts the Court has original jurisdiction.  See Motion to Remand ¶¶ 4-5, at 1.  The Court declines to remand the case on the Motion to Remand's bases.  Although Hunnicutt's Motion to Remand states that he does not file his action under § 1983, the Motion to Remand also states that he raises constitutional claims, see Motion to Remand ¶ 3, at 1, and that there are federal claims over which the Court has original jurisdiction, see Motion to Remand ¶ 5, at 1.  Hunnicutt's Complaint asserts that the Defendants violated his constitutional rights "pertaining to his outgoing mail and grievance process."  Complaint ¶ 5, at 2.  The Notice of Removal states that the Complaint "is subject to the jurisdiction of this Court pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims for copyright infringement," and because the Complaint "asserts claims pursuant to 42 U.S.C. § 1983 for violation of Plaintiff's First Amendment rights."  Notice of Removal at 2.  The Court will not remand the case, because removal was proper, since, although the Court dismisses the copyright claims, the Court concludes that Hunnicutt has stated a 42 U.S.C. § 1983 claim against Moore, Smith, Beaird, and Brodie for violation of his First Amendment rights, and the Court, further, has jurisdiction over the state law claims set forth in the Complaint pursuant to 28 U.S.C. § 1367..

**IT IS ORDERED** that: (i) the Motion in Opposition for Removal of Civil Action, filed August 9, 2018 (Doc. 6), is denied; and (ii) Plaintiff Carnell Hunnicutt's federal copyright claims and prison grievance claims in the Complaint (Tort), filed in state court December 21, 2017, filed in federal court July 12, 2018 (Doc. 1-1), are dismissed.

_____
UNITED STATES DISTRICT JUDGE


*Parties and counsel:*

Carnell Hunnicutt
Southern New Mexico Correctional Facility
Las Cruces, New Mexico

      *Plaintiff pro se*

April D. White
Yenson, Allen & Wosick, P.C.
Albuquerque, New Mexico

      *Attorneys for Defendants The Geo Group, Inc., M. Valeriano, Katherine Brodie and P. Valdez*

Michael D. Russell
Yenson, Allen & Wosick, P.C.
Albuquerque, New Mexico

      *Attorneys for Defendants M. Valeriano, Katherine Brodie and P. Valdez*


Kevin L. Nault
   Deputy General Counsel
New Mexico Corrections Department
Santa Fe, New Mexico

      *Attorney for Defendant German Franco*