IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CARNELL HUNNICUTT,

              Plaintiff,

                                                          2:18-cv-00667-JB-KRS

v.

DESTINEE MOORE; RAYMOND SMITH;
GEO CORP; LCCF; M. VALERIANO;
STACEY BEAIRD; KATHERINE BRODIE;
P. VALDEZ;T. FOSTER; and GERMAN
FRANCO,

              Defendants.

## ORDER FOR *MARTINEZ* REPORT

**THIS MATTER** comes before the Court following a review of the record and Defendants' motion for summary judgment. (Doc. 16). In this removed action, Plaintiff Carnell Hunnicutt, an inmate formerly confined at the Lea County Correction Facility ("LCCF"), sued Defendants for "copyright infringement, censorship, interference with outgoing mail, retaliatory punishment, negligence and infractions for criticizing prison conditions and personnel in outgoing correspondence." (Doc. 1). In denying Hunnicutt's motion to remand earlier in this case, the Court determined Hunnicutt stated a claim for relief under 42 U.S.C. § 1983 and the First Amendment against Defendants Destinee Moore, Raymond Smith, Stacey Beaird, and Katherine Brodie. (Doc. 33). The Court also retained supplemental jurisdiction over Hunnicutt's claims under New Mexico Tort Claims Act ("NMTCA"). The Court, however, dismissed Hunnicutt's remaining federal claims and all federal claims against Defendants GEO Corp, T. Foster, P. Valdez, M. Valeriano, and German Franco. (*Id.*).

On July 17, 2018, United States District Judge James O. Browning referred this matter to the Court to "conduct hearings, if warranted, including evidentiary hearings, and to perform any

legal analysis required to recommend to the [Presiding Judge] an ultimate disposition of the case." (Doc. 3) (citing 28 U.S.C. §§ 636(b)(1)(B), (b)(3) and *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990)).  Considering this mandate, Defendants' motion for summary judgment, and the existing record, Court concludes it cannot make recommendations to the Presiding Judge without additional information and documents not presently before the Court.  The Court, therefore, **ORDERS** Defendants to compile and file a report pursuant to *Martinez v. Aaron,* 570 F.2d 317 (10th Cir. 1978).

## FACTUAL BACKGROUND

As is relevant here, Hunnicutt alleges that Defendant Moore, acting under Defendants Smith, Beaird, Brodie, Valdez, and Foster, routinely targeted his outgoing mail at LCCF for political cartoons and incidents with staff.  (Doc. 1-1).  On March 24, June 1, June 16, June 21, and June 26, 2017, Moore allegedly intercepted, rejected, and returned to Hunnicutt mail Hunnicutt sent or tried to send to individuals outside the prison containing the "political cartoons about the prison and incidents with the staff." (Doc. 1-1, ¶¶5-8).  Hunnicutt complains that Moore and her superiors censored him and wrote him up for misconduct in connection with his outgoing mail.  He claims retaliation for exercise of his First Amendment rights against the prison officials. (Doc. 1-1).  Specifically, Hunnicutt alleges that Beaird and Moore signed the notice rejecting Hunnicutt's mail on one occasion and Brodie and Moore did so on a separate occasion.  Smith, for his part, "allowed Defendant Moore to punish [Hunnicutt] for criticizing prison staff in his outgoing mail and upheld the punishment." (*Id.*).

## STANDARD

Under *Martinez*, 570 F.2d 317 (10th Cir. 1978), federal courts in the Tenth Circuit may direct prison officials to investigate the incidents underlying a prisoner's lawsuit and then compile and file a report. A *Martinez* report helps the Court to ascertain whether there are any

2

factual or legal bases for the prisoner's claims. *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). The Tenth Circuit "consider[s] . . . the practice to be not only proper but necessary for the orderly consideration of the issues in this case and in other cases of this nature." *Martinez*, 570 F.2d at 319.

In civil rights cases under Section 1983, prisoners are not entitled to discovery as a matter of course—for good reason. *See* D.N.M.LR-Civ. 16.3(d); *Gee*, 829 F.2d at 1007. "Prisoner *pro se* civil rights complaints concerning their imprisonment cannot always receive the same presumption of merit that attends cases filed by attorneys subject to . . . sanctions." *Id.* Inmates "may seek a short sabbatical in the form of a trip to court, and they may even use complaints to harass[.]" *Id.* The *Martinez* report, however, strikes a balance. The procedure "allow[s] the court to dig beneath the conclus[ory] allegations" to determine whether dismissal or judgment is warranted "without trial." *Id.*; *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992) (A *Martinez* report may assist court on summary judgment). A *Martinez* report may often be "more useful to the parties than would be the use of interrogatories." *Martinez*, 570 F.2d at 319.

Under the *Martinez* procedure, prison officials typically compile a report that (1) thoroughly explains the allegations in a prisoner's complaint; (2) provides the results, if any, of their investigation into the allegations; (3) includes affidavits supporting any facts in the report; and (4) provides copies of all grievances and other documents related to the administrative record. *See Martinez*, 570 F.2d at 319; *Gee*, 817 F.2d at 1007. The Court has discretion to tailor the requirements of the *Martinez* report to the circumstances. *See Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1310 (10th Cir. 2010) (noting matters of discovery and scheduling are within the district court's discretion).

**ANALYSIS**

In a nutshell, the Court is tasked in this case with balancing Hunnicutt's free speech rights against the LCCF's legitimate penological interests. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 4174 U.S. 817, 822 (1974). In in the context of outgoing mail, "[p]rison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements." *Procunier v. Martinez*, 416 U.S. 396, 416 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989). Even outgoing mail that magnifies grievances or contains inflammatory racial views cannot reasonably be expected to present a danger or security threat *inside* the prison. *Id.*

At the same time, "[c]ensorship of personal correspondence that include threats, blackmail, contraband, plots to escape, discuss criminal activities, or otherwise circumvent prison regulations, is essential to the protection of prison order and security[.]" *Gandy v. Ortiz*, 122 F. App'x 421, 423 (10th Cir. 2005); *see also Martinez*, 416 U.S. at 416. In any event, the legitimate government interest must be "unrelated to the suppression of expression [and] . . . must be no greater than is necessary or essential to the protection of the particular governmental interest involved." *Martinez*, 416 U.S. at 416.

Here, Hunnicutt insists his speech was protected, offering political views and depicting prison conditions to the letters' recipients. By way of a motion for summary judgment, Defendants claim that Hunnicutt's correspondence was properly censored under the New Mexico Corrections Department's constitutional policies prohibiting abusive, offensive, and/or defamatory language directed at prison officials as a means of maintaining institutional order and security. (Doc. 16). In the Court's view, a *Martinez* report is necessary to develop a record

4

sufficient to balance the parties' competing interests and, ultimately, recommend a disposition to Judge Browning on the motion and more broadly the merits of the case. The Court recognizes that Defendants' motion for summary judgment contains many records that would be part of a *Martinez* report. Defendant Brodie and Associate Warden George Stephenson submit affidavits, which attach the New Mexico Corrections Department's "Correspondence Regulations" and a policy entitled "Inmate Discipline." (Docs. 16-1 – 16-4). While these materials are certainly helpful, they fall short of providing the record necessary to determine the legal and factual merit to Hunnicutt's claims.

First, Hunnicutt complains of censorship on May 24, June 1, June 16, June 21, and June 26, 2017. (Doc. 1-1). As it stands, the record includes information generally about cartoons drawn on the outside of institutional envelopes in late May and early June 2017 and the contents of letters on June 20 and 26, 2017. The Court cannot determine with any certainty what LCCF's files contain and whether the affidavits submitted as part of the motion for summary judgment capture the full range of conduct Hunnicutt describes. The affidavits themselves do not purport to include all the contents of their files during that period. A *Martinez* report would include the production of the entire file maintained by the prison concerning the inmate.

Second, the record does not include copies of the *actual* cartoons Hunnicutt drew, the letters he wrote, and the material he attempted to mail out. Defendants also reference other past instances of offending correspondence as a means of suggesting Hunnicutt knew how to abuse the process and target specific officials with harassing, offensive language and depictions, although the mail ostensibly was addressed to outside individuals. (Doc. 16-3). But that correspondence is not part of the record either. As a result, the Court is left with Defendants' characterizations of the correspondence and contents. The file Defendants maintain on Hunnicutt necessarily would contain the cartoons and letters and allow the Court to view the

5

context though the lens of the best evidence. From the description of the envelopes and letters in the record, there appears to be a mix of insults directed at Defendants Moore and Smith with satire of the censorship process and claims that the prison believes itself to be above the law. The Court cannot say on these descriptions alone that the challenged materials have no First-Amendment protection in the prison context and go beyond "unflattering or unwelcome opinions or factually inaccurate statements." Defendants' complete file will assist the Court in resolving the issue.

Third, Defendants' maintain that Moore found Hunnicutt's references to her to be demeaning, insulting, and offensive and assert "[a]ll of Ms. Moore's actions in rejecting Plaintiff's mail and submitting Inmate Misconduct Reports against Plaintiff were done solely for the purpose of enforcing the applicable correspondence and disciplinary regulations, not for any retaliatory or otherwise improper purpose." (Doc. 16-1, ¶15). But the record source of this information is Defendant Brodie's affidavit. (*Id*.). While Brodie may have secondhand information about Defendant Moore's perceptions, a complete *Martinez* report with affidavits from those involved may contain admissible evidence of what Defendant Moore perceived and communicated. Moreover, some portion of Brodie's affidavit is either hearsay or without personal knowledge and not necessarily admissible for summary judgment purposes. *See Johnson v. Weld County, Colo*., 594 F.3d 1202, 1209-10 (10th Cir. 2010) ("It is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment.") (citation omitted)).

Fourth, Hunnicutt's retaliation claim centers on disciplinary writeups for his cartoons and correspondence. The record, as it exists with Defendants' summary-judgment affidavits, mentions "Inmate Misconduct Reports" that Defendant Moore submitted. (Doc. 16-1). Yet these reports are not in the record as they should be in a *Martinez* report. The writeups could shed

light on what type of punishment was meted out, who actually was involved in disciplining Hunnicutt, their respective roles, and motivation behind the discipline. In Section 1983 cases, a defendant's personal involvement in the alleged constitutional violation is a necessary element of liability. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). Moreover, prison officials may not retaliate against or harass an inmate because the inmate has exercised his or her constitutional rights, even when the action taken would otherwise have been permissible. *See Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). In other words, who did what to whom and why is of critical importance in this case and a record without the disciplinary reports is insufficient to fully understand Hunnicutt's claims.

Fifth, Defendants argue Hunnicutt was censored and disciplined based on constitutional policies permitting such discipline. Some of the governing policies appear to be included in the record, but others may be missing and necessary to help explain Defendants' actions. For example, attached to Defendant Brodie's affidavit are the New Mexico Corrections Department's "Correspondence Regulations." (Doc. 16-2). Subsection B. of the "Definitions" section provides "All inmates' mail or packages, both incoming and outgoing, shall be opened and inspected for contraband and to intercept cash, checks or money orders. Mail is read and accepted or rejected based on legitimate institutional interests of order and security . . ." (*Id.* at 2). "Definitions" in Subsection A. defines "contraband" as "any material prohibited by law or regulation, or material which can reasonably be expected to cause physical injury or adversely affect the security and safety of the institution." (*Id.* at 1). The regulations attached to the Motion for Summary Judgment do not appear to contain a definition of the phrase "legitimate institutional interests of order and security." (*Id.*). It could be helpful to the Court to determine whether other regulations not yet provided to the Court give further gloss to the mentioned phrase and/or provide context to Hunnicutt's allegedly harassing correspondence and the censorship of it by LCCF. (*Id.* at 1-2).

Additionally, Subsection D. of the "Procedures" section of the regulations, which contains the heading "Inspection of Mail," provides in Subsection D.1. that non-legal and non-privileged outgoing mail ". . .will be read if there is reasonable suspicion to believe that the mail contains escape plans, other plans to commit a crime or to violate institutional rules or regulations, or constitutes a crime in and of itself." (*Id.* at 4). Thus, according to the "Definitions" Subsection D., outgoing mail is "inspected for contraband" and "Mail is read and accepted or rejected based on legitimate institutional interests of order and security." However, the "Procedures" Subsection D.1., addressing "Inspection of Mail", appears to require some "reasonable suspicion" before outgoing inmate mail is read. Further, it is not clear from a simple review of Subsection D.1. under "Inspection of Mail" whether the phrase "other plans" modifies only the words "to commit a crime," or whether the phrase "other plans" also modifies the phrase "to violate institutional rules or regulations". (*Id.*). In addition, Subsection E. of the regulations, titled "Rejection of Incoming and Outgoing Mail" provides in Subsection E.5. "Outgoing mail will be rejected when the mail contains contraband, escape plans, codes, other plans to commit a crime or to violate facility rules and regulations, is intentionally deceptive, harassing or would constitute a crime in and of itself." (*Id. at 5*). Subsection E.5's rejection provisions thus appear more expansive than Subsection D.1., addressing "Inspection of Mail".

Defendants' arguments and affidavits do not (1) mention reasonable suspicion even though it is apparent that Hunnicutt's outgoing mail was, in fact, read by prison employees; (2) address the interpretation of the above-mentioned phrases in Subsection D.1. of the "Procedures" section of the regulations; or (3) address the possible conflict between the regulatory provisions. The Court is left to speculate whether other regulations not part of the present record address the possible conflict in the regulations or the circumstances pursuant to which LCCF may go beyond inspecting outgoing inmate mail for contraband and *actually* read an inmate's outgoing mail. A

*Martinez* report will contain the complete regulations or, at least, confirm the Court has all applicable regulations and policies.

Finally, while Defendants addressed Hunnicutt's Federal law claims in their motion for summary judgment, subsequent to the filing of that motion, Judge Browning determined that supplement jurisdiction extended to Hunnicutt's causes of action under the NMTCA. (Doc. 33). Defendants have not addressed the NMTCA in their pending motion. Thus, even if successful, the motion for summary judgment could not be dispositive of the entire case. To fully understand Hunicutt's allegations and the factual and legal bases for the state claims, so that the undersigned may prepare an informed report and recommendation for Judge Browning, a *Martinez* report would be of assistance.

## CONCLUSION

For the reasons set forth above, the Court will order a *Martinez* report to more fully develop the record in this case so that it can recommend a disposition in this case.

**IT IS, THEREFORE, ORDERED** that on before **November 1, 2019**, Defendants file a *Martinez* report addressing the claims raised in in Hunnicutt's complaint. The report should include, without limitation:

a. All facts necessary to resolve the claims, including the names of all persons at LCCF who were directly involved in any censorship or discipline of Hunnicutt during the specific dates mentioned in the complaint or other dates on which Defendants will rely, as well as affidavits, if appropriate, detailing the persons' involvement.

b. A copy of Hunnicutt's entire disciplinary file, which should include at a minimum:

    1. All records in LCCF's files documenting the correspondence Hunnicutt attempted to send or that was sent and censored during the time period set forth in Hunnicutt's complaint or on other such occasions on which Defendants have

relied or will rely, including copies of the envelopes, stationary, and contents of the envelopes.

2. Copies of all "Inmate Misconduct Reports" and related documents generated as a result of the correspondence at issue in Hunnicutt's complaint and other such reports of misconduct on which Defendants have relied or will rely.

c. Copies of all regulations applicable to LCCF during the time period mentioned in the complaint that address interception and inspection of inmates' outgoing correspondence, censorship and return of correspondence, the permissible reasons for doing so, and the available disciplinary methods.

d. Any grievances Hunnicutt has filed in connection with or relating to the facts and circumstances underlying this case and copies of the applicable grievance procedure(s).

e. Records of any investigations conducted in the claims Hunnicutt raised in this case.

**IT IS FURTHER ORDERED** that Plaintiff respond to the *Martinez* report on or before **December 2, 2019**. At their election, Defendants may file a reply on or before **December 16, 2019**.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE