## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CARNELL HUNNICUTT, SR.,

       Plaintiff,

vs.                                                          No. CV 18-0667 JB/KRS

DESTINEE MOORE; RAYMOND SMITH;
GEO CORP; LCCF; M. VALERIANO;
STACEY BEAIRD; KATHERINE BRODIE;
P. VALDEZ; T. FOSTER; and GERMAN
FRANCO,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Magistrate Judge's Proposed Findings and Recommended Disposition, filed February 21, 2020 (Doc. 60)("PFRD"). In the PFRD, the Honorable Kevin R. Sweazea, United States Magistrate Judge for the United States District Court of the District of New Mexico, recommends granting in part and denying in part the Renewed Motion for Summary Judgement filed by Defendants Destinee Moore, Raymond Smith, Geo Group, M. Valeriano, Katherine Brodie, and P. Valdez as part of their <u>Martinez</u> report.[1] <u>See</u> Martinez Report, filed November 1, 2019 (Doc. 40); Joinder of Defendant Moore in Geo Defendants' Martinez Report and Motion for Summary Judgment, filed February 2, 2020 (Doc. 52); Joinder of Defendant Smith in Geo Defendants' Martinez Report and Motion for Summary Judgment, filed February 19, 2020 (Doc. 59). On March 6, 2020, Defendants Destinee Moore, Raymond Smith, Geo Group, M. Valeriano, Katherine Brodie, and P. Valdez filed

---

[1]A <u>Martinez</u> Report is a "report and investigation by prison officials to determine whether a pro se prisoner's allegations have any factual or legal basis." <u>Northington v. Jackson</u>, 973 F.2d 1518, 1521 (10th Cir. 1992)(citing <u>Martinez v. Aaron</u>, 570 F.2d 317, 318-19 (10th Cir. 1978)).

objections to the portion of the PFRD denying summary judgment.  See Geo Defendants' Objections to Proposed Findings and Recommended Disposition, filed March 6, 2020 (Doc. 63)("Objections").  The Court will overrule the Objections and adopt the PFRD.

## FACTUAL BACKGROUND

Plaintiff, Carnell Hunnicutt, Sr., was confined at the Lea County Correctional Facility in Hobbs, New Mexico ("LCCF") from 2015 to 2018.  See Plaintiff's Response to Defendants Martinez Report at 3-4, filed December 11, 2019 (Doc. 46).  Although he is from Connecticut, Hunnicutt was incarcerated in New Mexico pursuant to the Interstate Corrections Compact, which allows for the transfer of prisoners among members of the Compact, see N.M. Stat. Ann. §§ 31-5-17 to 31-5-19; Plaintiff's Response to Defendants Martinez Report at 3-4.

In his Complaint, Hunnicutt alleges that he is a cartoonist who uses his cartoons to comment on prison conditions, see Complaint ¶ 5, at 2, filed July 12, 2018 (Doc. 1-1); Plaintiff's Response to Defendants Martinez Report at 41-65, filed December 11, 2019 (Doc. 46), and that "Defendants Smith, Brodie, Beaird, Valdez and Foster routinely targeted Plaintiff's outgoing mail for political cartoons/cartoons about the prison and incidents with staff," and "retaliate[ed] against him and attempt[ed] to censor him for criticizing prison conditions and personnel in his outgoing mail," Complaint ¶ 5, at 2.  Based on the Defendants' actions, Hunnicutt advances the following claims: "copyright infringement, interference with outgoing mail, retaliatory punishment, negligence and infractions for criticizing prison conditions and personnel in outgoing correspondence."  Complaint ¶ 1, at 1.

## PROCEDURAL BACKGROUND

On July 12, 2018, Hunnicutt sued Defendants Destinee Moore, Raymond Smith, Geo Corp, LCCF, M. Valeriano, Stacy Beard, Katherine Brodie, T. Foster, P. Valdez, and German

Franco in the Fifth Judicial District Court, Lea County, State of New Mexico.  See Complaint ¶ 2, at 2.  The Defendants removed subsequently the action to the federal Court.  See Notice of Removal, filed July 12, 2018 (Doc. 1).  Seeking to remain in state court, Hunnicutt moved to remand.  See Motion to Remand, filed August 9, 2020 (Doc. 6).  The Defendants opposed the motion, see Defendants Geo, Valeriano, Brodie and Valdez' Response in Opposition to Plaintiff's Motion in Opposition for Removal of Civil Act, filed Aug 16, 2020 (Doc. 10), and separately moved for summary judgment, see The Geo Defendants' Motion for Summary Judgment and Memorandum of Law in Support, filed October 12, 2018 (Doc. 16).

On March 28, 2019, the Court denied Hunnicutt's Motion to Remand and screened the Complaint pursuant 28 U.S.C. § 1915A, concluding that Hunnicutt stated a retaliation claim under the First Amendment to the Constitution of the United States of America.  See Memorandum Opinion and Order Denying Motion to Remand at 19, filed March 28, 2019 (Doc. 33)("Taking Hunnicutt's allegations as true, prison officials withheld his outgoing mail, because it contains unflattering or unwelcome opinions, and not out of legitimate penological interests, and then punished Hunnicutt for asserting his First Amendment rights.").  However, the Court found that Hunnicutt did not state cognizable claims under 17 U.S.C. §§ 101-810, or under 42 U.S.C. § 1983 for violation of prison grievance procedures.  See Memorandum Opinion and Order Denying Motion to Remand at 19-21.  Following the Court's Order directing the Defendants to submit a Martinez report, the Court denied their Motion for Summary Judgment without prejudice.  See Memorandum Opinion and Order Denying the Defendants' Motion for Summary Judgment Without Prejudice and Denying the Plaintiff's Motion for Relief Under Rule 56(D) as Moot, filed September 28, 2019 (Doc. 38).  The Defendants filed their Renewed Motion for Summary Judgment on November 1, 2019.  See Martinez Report, filed November 1,

2019 (Doc. 40)("Renewed Motion for Summary Judgment").  On February 10 and 19, 2020, Moore and Smith, joined in the Renewed Motion for Summary Judgment.  See Joinder of Defendant Moore in Geo Defendants' Martinez Report and Motion for Summary Judgment, filed February 10, 2020 (Doc 52); Joinder of Defendant Smith in Geo Defendants' Martinez Report and Motion for Summary Judgment, filed February 19, 2020  (Doc. 59).

The remaining claims in this case are that Smith, Beaird, Brodie, and Moore violated Hunnicutt's First Amendment rights by retaliating against him for cartoons and statements included in his outgoing mail on June 1 or 2, 2017; June 20, 2017; and June 26, 2017; as well as Hunnicutt's state-law causes of action.  See Proposed Findings and Recommended Disposition at 9, filed February 21, 2020 (Doc. 60).  In considering these claims, Magistrate Judge Sweazea explained that a claim for retaliation under the First Amendment comprises three elements: (i) the inmate engaged in protected speech; (ii) the prison official's actions caused the inmate "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (iii) the adverse action was "substantially motivated" in response to the inmate's protected speech.  PFRD at 9 (quoting Shero v. City of Grove, Okl., 510 F.3d 1196, 1203 (10th Cir. 2007)).

Regarding the June 1 or 2, 2017 correspondence, Magistrate Judge Sweazea found that Hunnicutt did not suffer a cognizable adverse action, because the "undisputed material facts establish that no prison official issued Hunnicutt a misconduct report for the single frame cartoon, Hunnicutt was not disciplined for that incident, and the cartoon ultimately was mailed to the intended recipient, albeit after it was returned to Hunnicutt and delayed by less than thirty days."  PFRD at 9 (citing Schroeder v. Drankiewicz, 519 Fed. Appx. 947, 950 (7th Cir. 2013)(explaining that "a delay of less than two months in sending a single piece of personal

mail" did not amount to "an injury of constitutional dimension"); Muhammed v. McKune, 1995 U.S. Dist. LEXIS 12620, at *7 (D. Kan. Aug. 24, 1995)(Van Bebber, J.)(finding that ninety-day delay in receiving mail was neither prejudicial nor harmful)).

Next, Magistrate Judge Sweazea found that genuine issues of material fact preclude summary judgment on Hunnicutt's claims that he suffered retaliation in violation of the First Amendment for his outgoing mail dated June 20, 2017 and June 26, 2017. See PFRD at 19. Magistrate Judge Sweazea explained that the "free flow of incoming and outgoing mail" to and from inmates is among those rights that the First Amendment protects. PFRD at 10 (quoting Burns v. Martuscello, 890 F.3d 77, 88 (2d Cir. 2018)). An inmate's right to correspond is not absolute, however, and restrictions on outbound correspondence containing "threats, blackmail, contraband, plots to escape, discuss criminal activities, or otherwise circumvent prison regulations, [are] essential to the protection of prison order and security." PFRD at 11 (quoting Gandy v. Ortiz, 122 Fed. Appx. 421, 423 (10th Cir. 2005)). Accordingly, prison officials may read outgoing, non-legal mail to ensure that an inmate's letter does not impinge on these interests, but "may not punish inmates for statements made in letters to outsiders that do not impinge on these important governmental interests." PFRD at 11 (quoting Gandy v. Ortiz, 122 Fed. Appx. at 423).

After reviewing relevant cases, and noting that neither the United States Court of Appeals for the Tenth Circuit nor the Supreme Court of the United States of America has decided a factually analogous case, Magistrate Judge Sweazea considered whether the mail sent by Hunnicutt was legitimate correspondence to outside persons or, instead, was directing defamatory comments to the warden and prison staff "through the guise of legitimate outgoing communication." PFRD at 14 (citing Leonard v. Nix, 55 F.3d 370, 371 (8th Cir. 1995)).

Magistrate Judge Sweazea acknowledged that Hunnicutt's speech in the outgoing mail is "certainly offensive, unflattering, and arguably defamatory," and that harassing or demeaning staff "can implicate legitimate penological interests of security and order."  PFRD at 14. Nevertheless, examining the evidence in the light most favorable to Hunnicutt and drawing all reasonable inferences in his favor, Magistrate Judge Sweazea found that a fact finder could conclude that the First Amendment protects Hunnicutt's speech, because (i) he is a published artist on prison conditions, (ii) he uses drawing as a medium to comment on those conditions, and (iii) he addressed the letters to persons outside the institution, one of whom helps Hunnicutt exhibit his work.  See PFRD at 15-16.  Moreover, Hunnicutt's correspondence does not contain threats of violence or escape plans, and the case does not involve a claim of immunity from suit. See PFRD at 17-18.  Magistrate Judge Sweazea, therefore, found that genuine issues of material fact preclude summary judgment on Hunnicutt's First Amendment retaliation claims.  See PFRD at 19.

Finally, Magistrate Judge Sweazea found that Hunnicutt's state law claims fail as a matter of law because New Mexico law does not afford him a private remedy for violations under the New Mexico Constitution.  See PFRD at 20 (citing Barreras v. State Corr. Dep't, 62 P.3d 770, 776 (N.M. Ct. App. 2003)).  Accordingly, Magistrate Judge Sweazea recommended granting the Defendants' motion for summary judgment as to Hunnicutt's June 1 or 2, 2017, letter, and on his state-law claims, and denying summary judgment as to his claims of retaliation for the June 20 and 26, 2017, correspondence.

## LAW REGARDING OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDATIONS

District courts may refer dispositive motions to a Magistrate Judge for a recommended disposition.  See Fed. R. Civ. P. 72(b)(1)("A magistrate judge must promptly conduct the

required proceedings when assigned, without parties' consent, to hear a pretrial matter dispositive of a claim or defense . . . ."). Rule 72(b)(2) of the Federal Rules of Civil Procedure governs objections to recommendations from a Magistrate Judge and provides that, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(3). Under the rule, when resolving objections "the district judge must determine <u>de novo</u> any part of the magistrate judge's disposition that has been properly objected to by a party. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

Similarly, 28 U.S.C. § 636 provides:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1)(C).

"The filing of objections to the magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute." <u>United States v. One Parcel of Real Property, With Buildings, Appurtenances, Improvements, and Contents</u>, 73 F.3d 1057, 1059 (10th Cir. 1996)("One Parcel")(quoting <u>Thomas v. Arn</u>, 474 U.S. 140, 147 (1985)). As the United States Court of Appeals for the Tenth Circuit has noted, "the filing of objections advances the interests that underlie the Magistrate's Act,[2] including

---

[2]Congress enacted the Federal Magistrates Act, 28 U.S.C. §§ 631-39, in 1968.

judicial efficiency." <u>United States v. One Parcel</u>, 73 F.3d at 1059 (citing <u>Niehaus v. Kansas Bar Ass'n</u>, 793 F.2d 1159, 1165 (10th Cir. 1986); <u>United States v. Walters</u>, 638 F.2d 947, 950 (6th Cir. 1981)).

The Tenth Circuit held in <u>United States v. One Parcel</u> "that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." <u>United States v. One Parcel</u>, 73 F.3d at 1060.  "To further advance the policies behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, ha[s] adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.'" <u>United States v. One Parcel</u>, 73 F.3d at 1059 (citations omitted).

In addition to requiring specificity in objections, the Tenth Circuit has stated that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996).  <u>See</u> <u>United States v. Garfinkle</u>, 261 F.3d 1030, 1030-31 (10th Cir. 2001)("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.").  And, in an unpublished opinion, the Tenth Circuit stated that "the district court correctly held that [a petitioner] had waived [an] argument by failing to raise it before the magistrate." <u>Pevehouse v. Scibana</u>, 229 F. App'x 795, 796 (10th Cir. 2007)(unpublished).[3]

---

[3]The Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  <u>See</u> 10th Cir. R. 32.1(A)("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored.  However, if an unpublished opinion or order and judgment has persuasive value

In <u>United States v. One Parcel</u>, the Tenth Circuit, in accord with other Courts of Appeals, expanded the waiver rule to cover objections that are timely, but too general. <u>See</u> <u>United States v. One Parcel</u>, 73 F.3d at 1060. The Supreme Court of the United States -- in the course of approving the United States Court of Appeals for the Sixth Circuit's use of the waiver rule -- has noted:

> It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings. The House and Senate Reports accompanying the 1976 amendments do not expressly consider what sort of review the district court should perform when no party objects to the magistrate's report. <u>See</u> S. Rep. No. 94-625, pp. 9-10 (1976) (hereafter Senate Report); H.R. Rep. No. 94-1609, p. 11 (1976); U.S. Code Cong. & Admin. News 1976, p. 6162 (hereafter House Report). There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate judge's report than the court considers appropriate. Moreover, the Subcommittee that drafted and held hearing on the 1976 amendments had before it the guidelines of the Administrative Office of the United States Courts concerning the efficient use of magistrates. Those guidelines recommended to the district courts that "[w]here a magistrate makes a finding or <u>ruling</u> on a motion or an issue, his determination should become that of the district court, unless specific objection is filed within a reasonable time." <u>See</u> Jurisdiction of the United States Magistrates, Hearings on S. 1283 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 94th Cong., 1st Sess., 24 (1975)(emphasis added)(hereafter Senate Hearings). The Committee also heard Judge Metzner of the Southern District of New York, the chairman of a Judicial Conference Committee on the administration of the magistrate system, testify that he personally followed that practice. <u>See</u> <u>id.</u>, at 11 ("If any objections come in, . . . I review [the record] and decide it. If no objections come in, I merely sign the magistrate's order."). The Judicial Conference of the United States, which supported the de novo standard of review eventually incorporated in § 636(b)(1)(C), opined that in most instances no party would object to the magistrate's recommendation, and the litigation would terminate with the judge's adoption of the magistrate's report. <u>See</u> Senate Hearings, at 35, 37. Congress apparently assumed, therefore, that any party who was dissatisfied for any reason with the magistrate's report would file objections,

> with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

<u>United States v. Austin</u>, 426 F.3d 1266, 1274 (10th Cir.2005)(citations omitted).

and those objections would trigger district court review. There is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a magistrate's report to which no objections are filed. It did not preclude treating the failure to object as a procedural default, waiving the right to further consideration of any sort. We thus find nothing in the statute or the legislative history that convinces us that Congress intended to forbid a rule such as the one adopted by the Sixth Circuit.

Thomas v. Arn, 474 U.S. at 150-52 (emphasis in original)(footnotes omitted).

The Tenth Circuit also noted, "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'" United States v. One Parcel, 73 F.3d at 1060 (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations.")(citations omitted)). Cf. Thomas v. Arn, 474 U.S. at 154 (noting that, while "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask," a failure to object "does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard"). In United States v. One Parcel, the Tenth Circuit noted that the district judge had decided sua sponte to conduct a de novo review despite the lack of specificity in the objections, but the Tenth Circuit held that it would deem the issues waived on appeal, because it would advance the interests underlying the waiver rule. See United States v. One Parcel, 73 F.3d at 1060-61 (citing cases from other Courts of Appeals where district courts elected to address merits despite potential application of waiver rule, but the Courts of Appeals opted to enforce waiver rule).

Where a party files timely and specific objections to the magistrate judge's proposed findings and recommendations, "on . . . dispositive motions, the statute calls for a de novo determination, not a de novo hearing." United States v. Raddatz, 447 U.S. 667, 674 (1980). "[I]n

providing for a 'de novo determination' rather than a <u>de novo</u> hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." <u>United States v. Raddatz</u>., 447 U.S. at 676 (quoting 28 U.S.C. § 636(b); citing <u>Mathews v. Weber</u>, 423 U.S. 261, 275 (1976)).  The Tenth Circuit requires a "district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation" when conducting a <u>de novo</u> review of a party's timely, specific objections to the Magistrate Judge's report. <u>In re Griego</u>, 64 F.3d 580, 583-84 (10th Cir. 1995).  "When objections are made to the magistrate's factual findings based on conflicting testimony or evidence . . . the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing." <u>Gee v. Estes</u>, 829 F.2d 1005, 1008-09 (10th Cir. 1987).

A district court must "clearly indicate that it is conducting a de novo determination" when a party objects to the Magistrate Judge's report "based upon conflicting evidence or testimony." <u>Gee v. Estes</u>, 829 F.2d at 1009.  On the other hand, a district court fails to meet the requirements of 28 U.S.C. § 636(b)(1) when it indicates that it gave "considerable deference to the magistrate's order." <u>Ocelot Oil Corp. v. Sparrow Indus.</u>, 847 F.2d 1458, 1464 (10th Cir. 1988).  A district court need not, however, "make any specific findings; the district court must merely conduct a de novo review of the record." <u>Garcia v. City of Albuquerque</u>, 232 F.3d 760, 766 (10th Cir. 2000).  "[T]he district court is presumed to know that de novo review is required. . . .  Consequently, a brief order expressly stating the court conducted de novo review is sufficient." <u>Northington v. Marin</u>, 102 F.3d 1564, 1570 (10th Cir. 1996) (citing <u>In re Griego</u>, 64 F.3d at 583-84).  "[E]xpress references to de novo review in its order must be taken to mean it properly considered the pertinent portions of the record, absent some clear indication otherwise."

Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d 722, 724 (10th Cir. 1993).  The Tenth Circuit has held that a district court properly conducted a de novo review of a party's evidentiary objections when the district court's "terse" order contained one sentence for each of the party's "substantive claims" and did "not mention his procedural challenges to the jurisdiction of the magistrate to hear the motion." Garcia v. City of Albuquerque, 232 F.3d at 766.  The Tenth Circuit has explained that brief district court orders that "merely repeat the language of § 636(b)(1) to indicate its compliance" are sufficient to demonstrate that the district court conducted a de novo review:

> It is common practice among district judges in this circuit to make such a statement and adopt the magistrate judges' recommended dispositions when they find that magistrate judges have dealt with the issues fully and accurately and that they could add little of value to that analysis. We cannot interpret the district court's statement as establishing that it failed to perform the required de novo review.

In re Griego, 64 F.3d at 584.

Notably, because a district court may place whatever reliance it chooses on a magistrate judge's proposed findings and recommendations, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the [M]agistrate" Judge, 28 U.S.C. § 636(b)(1), as "Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations . . . ." United States v. Raddatz, 447 U.S. at 676 (emphasis omitted). See Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d at 724-25 (holding that the district court's adoption of the Magistrate Judge's "particular reasonable-hour estimates" is consistent with the de novo determination that 28 U.S.C. § 636(b)(1) and United States v. Raddatz require).

Where no party objects to the Magistrate Judge's PFRD, the Court will still review the Magistrate Judge's recommendations.  In Pablo v. Soc. Sec. Admin., No. CIV 11–0132 JB/ACT,

2013 WL 1010401 (D.N.M. 2013)(Browning, J.), the plaintiff failed to respond to the Magistrate Judge's PFRD, and thus waived his right to appeal the recommendations, but the Court nevertheless conducted a review.  The Court generally does not "review the PF&RD de novo, because the parties had not objected thereto, but rather review[s] the recommendations to determine whether they clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion." Pablo v. Soc. Sec. Admin, 2013 WL 1010401, at *4.  The Court, thus, does not determine independently what it would do if the issues had come before the Court first, but rather adopts the PFRD where "[t]he Court cannot say that the Magistrate Judge's recommendation . . . is clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion." Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *4.  See Alexandre v. Astrue, No. CIV 11–0384 JB/SMV, 2013 WL 1010439, at *4 (D.N.M. 2013)(Browning, J.)("The Court rather reviewed the findings and recommendations of the Honorable Stephan M. Vidmar, United States Magistrate Judge, to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion. The Court determines that they are not, and will therefore adopt the PFRD."); Trujillo v. Soc. Sec. Admin., No. CIV 12–1125 JB/KBM, 2013 WL 1009050, at *5 (D.N.M. 2013)(Browning, J.)(adopting the proposed findings and conclusions, noting: "The Court did not review the ARD de novo, because Trujillo has not objected to it, but rather reviewed the . . . findings and recommendations to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion, which they are not.").  This review, which is deferential to the Magistrate Judge's work when there is no objection, nonetheless provides some review in the interest of justice, and seems more consistent with the waiver rule's intent than no review at all or a full-fledged review.  Accordingly, the Court considers this standard of review appropriate.  See Thomas v. Arn, 474 U.S. at 151 ("There is

nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate.").

<u>ANALYSIS</u>

The Defendants object only to the recommendation that the Court deny summary judgment for the June 20 and 26, 2017, correspondence claims.  <u>See</u> Objections at 2.  First, the Defendants argue that the Court should enter summary judgment for Brodie and Beaird on all claims, because they were not personally involved in the disciplinary proceedings involving the June 20 and 26, 2017, correspondence.  <u>See</u> Objections at 2-3.  The Defendants' argument that Brodie and Beaird were not involved personally is not developed in the Defendants' Motion for Summary Judgment, and could therefore be considered waived: "Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."  <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996).  <u>See</u> <u>United States v. Garfinkle</u>, 261 F.3d 1030, 1031 (10th Cir. 2001)("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived."); <u>Pevehouse v. Scibana</u>, 229 Fed. Appx. 795, 796 (10th Cir. 2007)(unpublished)("[T]he district court correctly held that [a petitioner] had waived [an] argument by failing to raise it before the magistrate."). The Court will nonetheless consider the merits of the argument.  Although the Defendants are correct that constitutional claims against individuals are typically based on personal liability, <u>see</u>, <u>e.g.</u>, <u>Grimsley v. Mackay</u>, 93 F.3d 676, 679 (10th Cir. 1996)("[I]n order to successfully assert a § 1983 claim under the Eighth Amendment for failure to protect, a plaintiff must show personal involvement or participation in the incident. Supervisor status alone is insufficient to support liability.")(citation omitted), the Defendants' Objection contradicts the statement that the Defendants made in their summary judgment motion, filed as part of their <u>Martinez</u> report, that Brodie and Beard were "involved in

reviewing, rejecting and responding to the outgoing mail at issue and/or in disciplining Hunnicutt," Martinez Report at 2. The Defendants' statement in the Martinez report that Brodie and Beard were "involved . . . in disciplining Hunnicutt," Martinez Report at 2, is to be "treated like an affidavit" on summary judgment, Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991). The Defendants do not explain why now the Court should disregard their earlier assertion. Similarly, the "plaintiff's complaint may also be treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury." Hall v. Bellmon, 935 F.2d at 1111.[4] Based on the Martinez report and the Complaint, there is evidence in the record to support a finding that Brodie and Beaird were personally involved in the disciplinary proceedings. Summary judgment, therefore, is not appropriate. See Fed. R. Civ. P. 56(a)("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); Corman v. JWS of New Mexico, Inc., 356 F. Supp. 3d 1148, 1171 (D.N.M. 2018)(Browning, J.)("[T]he court must resolve all reasonable inferences and doubts in the nonmoving party's favor, and construe all evidence in the light most favorable to the nonmoving party."). The Court, therefore, will overrule this Objection.

Next, the Defendants restate their arguments that they did not violate Hunnicutt's First Amendment rights. For example, the Defendants argue they are entitled to summary judgment, because Hunnicutt "engaged in a pattern of deliberate and intentional harassment and abuse of staff that threatened to disrupt and diminish institutional order and security at LCCF." Objections at 3-4. The Defendants contend that no reasonable factfinder could find that Hunnicutt "did not deliberately, purposely and intentionally target Moore for abuse via the

---

[4]Hunnicutt notarized his Complaint on December 11, 2017. See Complaint at 5.

outgoing mail." Objections at 5. Additionally, the Defendants assert that it is "undisputed that Hunnicutt knew Ms. Moore was reviewing the contents of his outgoing mail no later than June 13, 2017," and that "Hunnicutt's conduct plainly violated valid and controlling prison regulations." Objections at 7.

As explained in the PFRD at 10-11, an "inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system . . . ." Pell v. Procunier, 417 U.S. 817, 822 (1974). The "free flow of incoming and outgoing mail" to and from inmates is among those rights that the First Amendment protects. Burns v. Martuscello, 890 F.3d 77, 88 (2d Cir. 2018). Moreover, inmate correspondence implicates two First Amendment interests: the sender's and the recipient's. See Procunier v. Martinez, 416 U.S. 396, 408 (1974)(explaining "[c]ommunication by letter is not accomplished by the act of writing words on paper" but "is effected only when the letter is read by the addressee[,]" meaning that "[b]oth parties to the correspondence have an interest in securing that result, and censorship of the communication between them necessarily impinges on the interest of each"), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989).

Nevertheless, an inmate's right to correspond is not absolute, and prisons place "a restriction on inmate correspondence that furthers an important or substantial interest" of the institution's administration. Procunier v. Martinez, 416 U.S. at 413. Therefore, restrictions on outgoing correspondence containing "threats, blackmail, contraband, plots to escape, discuss[ing] criminal activities, or otherwise circumvent[ing] prison regulations, [are] essential to the protection of prison order and security." Gandy v. Ortiz, 122 Fed. Appx. at 423. Additionally, while prison officials may generally read outgoing, non-legal mail to ensure that an inmate's letter does not impinge on these interests, censorship and punishment "simply to

eliminate unflattering or unwelcome opinions or factually inaccurate statements," as well as statements that "unduly complain," "magnify grievances," express "inflammatory political, racial, religious or other views," and are deemed "defamatory" or "otherwise inappropriate," do not further a cognizable penological interest.  Procunier v. Martinez, 416 U.S. at 413-16.

The PFRD discussed Gandy v. Ortiz, where the Tenth Circuit determined that a prisoner stated a claim under § 1983 when the facility disciplined him for sending a letter to Home Depot "to inform the company of what he believed to be an illegal program being instituted at the prison that would impinge on the business of Home Depot." 122 Fed. Appx. at 422. Additionally, the PFRD considered several cases upholding an inmate's First Amendment protections to use coarse, insulting, profanity-laced descriptions of prison staff in outgoing mail. See PFRD at 11-12 (discussing Loggins v. Delo, 999 F.2d 364, 365 (8th Cir. 1993); McNamara v. Moody, 606 F.2d 621, 623-26 (5th Cir. 1979); Santiago v. Rabideau, No. CIV 15-1856, 2016 WL 4490578 (N.D. Ill. Aug. 23, 2016)(finding a letter from an inmate calling the governor a "motherfucker" entitled to First Amendment protection).  In contrast, Magistrate Judge Sweazea discussed cases upholding discipline where the inmate uses outgoing mail as a pretext to communicate directly to the prison official.  See PFRD at 12-13 (discussing Leonard v. Nix, 55 F.3d v. 371; Carrol v. Tucker, 17 Fed. Appx. 392, 393 (7th Cir. 2001); and Freeman v. Benson, No. CIV 16-3127-DDC-TJJ, 2017 WL 5731295, at *6 (D. Kan. Nov. 28, 2017)).

Against this framework, Magistrate Judge Sweazea acknowledged that the Defendants' argument that Hunnicutt was directing defamatory comments to the warden and prison staff through the guise of legitimate outgoing communication "carries some force."  PFRD at 13. Indeed, Magistrate Judge Sweazea found that Hunnicutt's ten-frame cartoon and comments in the June 20 and 26, 2017, letters "are certainly offensive, unflattering, and arguably defamatory,"

and that harassing and demeaning staff "has any number of implications on legitimate penological interests of security and order."   PFRD at 14.   Nevertheless, Magistrate Judge Sweazea reasoned there is a second, reasonable reading of the facts, which is that Hunnicutt's correspondence amounts to merely unflattering portrayals or satire, and therefore, are no worse than the descriptions of prison staff in Loggins v. Delo and McNamara v. Moody, where discipline and censorship offended the First Amendment.   See PFRD at 15-16 (discussing Loggins v. Delo, 999 F.2d 364, 365 (8th Cir. 1993); McNamara v. Moody, 606 F.2d 621, 623-26 (5th Cir. 1979)).

The Court agrees that a fact finder could conclude reasonably that the correspondence is protected speech, especially considering that (i) Hunnicutt sits on the advisory board of a prison abolitionist organization, (ii) is a published artist on prison conditions, (iii) uses drawing as a medium to comment on those conditions, and (iv) one of the addressees of the correspondence has been exhibiting and selling Plaintiff's artwork for twenty years.   See PFRD at 16. Additionally, while Hunnicutt's June letters mention staff members' names, there is nothing directing explicitly the correspondence to the staff, and Hunnicutt's correspondence does not contain threats of violence or escape plans.   See PFRD at 4-5.   Therefore, examining the evidence in the light most favorable to Hunnicutt, and drawing all reasonable inferences in his favor, the Court holds that genuine issues of material fact preclude summary judgment on Hunnicutt's claims of retaliation as they relate to the June 20 and 26, 2017 correspondence.   As for the June 1 or 2, 2017 letter and Hunnicutt's state-law claims, the Court concludes that the findings and recommended disposition in the PFRD are not clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.

**IT IS ORDERED** that: (i) the Defendants' Destinee Moore, Raymond Smith, GEO Group Inc., M. Valeriano, Katherine Brodie, and P. Valdez Objections to Proposed Findings and Recommended Disposition are overruled; (ii) the Magistrate Judge's Proposed Findings and Recommended Disposition are adopted; (iii) the Defendants' Motion for Summary Judgment is granted as to the June 1 or 2, 2017 letter and Hunnicutt's state-law claims; and (iv) Defendants' Motion for Summary Judgment is denied to Hunnicutt's claims of retaliation as they relate to the June 20 and 26, 2017, correspondence.


                                                           _____
                                                           UNITED STATES DISTRICT JUDGE

*Counsel*:

Carnell Hunnicutt
Las Cruces, New Mexico

      *Pro Se Plaintiff*

April D. White
YLAW, P.C.
Albuquerque, New Mexico

      *Attorney for Defendants Destinee Moore, Raymond Smith, The GEO Group, Inc.,*
      *M. Valeriano, Lee County Correctional Facility, Katherine Brodie, and P. Valdez*

Kevin L. Nault
New Mexico Corrections Department
Santa Fe, New Mexico

      *Attorney for Defendants T. Foster and German Franco*